**LITTLE SIX, INC. and Shakopee Mdewakanton Sioux (Dakota) Community, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 96–468 T.

United States Court of Federal Claims.

March 2, 1999.

## OPINION

SMITH, Chief Judge.

This case is before the court on cross-motions for summary judgment. Plaintiffs Shakopee Mdewakanton Sioux Community and its corporation, Little Six, Inc., seek a refund of federal excise taxes paid on gaming operations conducted on their reservation between 1986 and 1992. Because Indian Tribal games are subject to excise taxation under Chapter 35 of the Internal Revenue Code, and because plaintiffs have not demonstrated any valid exemption to such taxes, the court must DENY plaintiffs' Motion for Summary Judgment and GRANT defendant's Cross Motion for Summary Judgment.

## BACKGROUND

This is a suit for the refund of federal excise taxes imposed upon gross wagers under IRC § 4401 and of the related occupational tax under IRC § 4411. Plaintiffs are suing for refund of taxes paid for the period January 1, 1986 to June 30, 1992, imposed because of "pull-tab" games operated on plaintiffs' reservation in Minnesota. Plaintiffs are the Shakopee Mdewakanton Sioux (Dakota) Community (Community), which conducted the games directly until April 1, 1991, and Little Six, Inc., a corporation organized under the Community's tribal law and wholly-owned by the Community, which conducted the games from April 1, 1991 to June 30, 1992.

The IRS assessed taxes against plaintiffs, according to IRC Chapter 35, §§ 4401 and 4411, following an audit in 1991. In July 1992 plaintiffs paid under protest the taxes assessed for the period in question, totaling $174,289.39. Plaintiffs brought this suit in August 1992.

Indian tribes began conducting large-scale gaming operations on reservations in the early 1980s, and by 1991, 150 of the 312 federally recognized tribes were participating in some form of commercial gambling. *See* 15 HAMLINE L.REV. 471, 489. It has become a big business. For 1991, revenues from Indian gaming were estimated at $1 billion nationally. *Id.* Due to concerns about the infiltration of organized criminal elements,

Mary J. Streitz, with whom were Thomas J. Peckham, Dorsey & Whitney, Minneapolis, MN, and Kurt V. BlueDog, BlueDog, Olson & Small, Minneapolis, MN, for the plaintiff.

William K. Drew, with whom were Mildred L. Seidman, Chief, Court of Federal Claims Section, and Loretta C. Argrett, Assistant Attorney General, Tax Division, United States Department of Justice, Washington D.C., for the defendant.

Congress passed the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 *et seq.,* in 1988. IGRA, designed to protect both tribal independence and the welfare of citizens on and off the reservation, set guidelines for the conduct of tribal gaming. IGRA also discussed tax reporting and withholding requirements.

## DISCUSSION

Plaintiffs allege that the 0.25% federal excise tax imposed by 26 U.S.C. § 4401 (IRC Chapter 35) is not applicable to Indian gaming operations which are authorized by federal, but not by state, law. In the alternative, plaintiffs contend that if they are subject to the federal excise tax imposed by § 4401, then 25 U.S.C. § 2719(d)(1) (IGRA) creates a statutory inconsistency that must be construed in favor of Indian tribes. According to this second argument, plaintiffs assert that § 2719(d)(1) requires that for purposes of IRC Chapter 35, tribes are to be treated as states, and are therefore exempted from federal excise tax by 26 U.S.C. § 4402.

Plaintiffs also dispute the levy of an occupational tax under § 4411, but this issue is determined solely by the outcome of the application of § 4401. Section 4411 imposes a $50 annual tax upon anyone who operates a game taxable at 0.25% under § 4401(a)(1), and imposes a $500 annual tax upon anyone subject to the 2% excise tax rate under § 4401(a)(2). The occupational tax under § 4411 does not depend upon the characterization of a game's operator(s). Instead, any taxpayer who is liable for the § 4401 tax also must pay the § 4411 occupational tax.

▪ Plaintiffs argue first that their gaming operation is not addressed by and therefore is exempt from taxation under 26 U.S.C. § 4401(a)(1). Plaintiffs argue that their operation is authorized under federal law, not the law of Minnesota, so it can not be characterized as "state-authorized," and so is not taxable at the 0.25% rate. Plaintiffs claim that § 4401(a)(2), taxing "unauthorized" gaming operations at a 2% rate, is similarly inapplicable, reading "unauthorized" as "illegal." In essence, plaintiffs argue that a third, untaxed category must be implied by their interpretation of the terms used in

§ 4401: one for gaming authorized by federal but not by state law.

A careful reading of § 4401 shows that plaintiff's reading of the statute is not reasonable. Section 4401(a)(2) imposes "on *any* wager not described in paragraph (1) an excise tax equal to 2 percent of the amount of such wager." (Emphasis added.) This language encompasses the entire universe of possible gaming operations. All wagers fall into one of the two categories; tribal gaming is either state-authorized, or it is unauthorized. Viewed in that light, imposition upon plaintiff of the 0.25% tax rate is the lightest possible application of § 4401(a)(1), and is actually a tax relief provision. Plaintiffs' attempt to characterize their gaming operation as outside the purview of state-authorized gaming proves too much, because the only option remaining is the higher tax level.

▪ Plaintiffs argue in the alternative that if their gaming *is* addressed by § 4401, they may still claim exemption from the federal excise tax because IGRA § 2719(d)(1) puts them on an equal footing with the states. Section 2719(d)(1) states that

"the provisions of title 26 (including sections 1441, 3402(q), 6041, and 60501, and Chapter 35 of such title) concerning the reporting and withholding of taxes with respect to the winnings from gaming or wagering operations shall apply to Indian gaming operations conducted pursuant to this chapter ... in the same manner as such provisions apply to State gaming and wagering operations."

Under 26 U.S.C. § 4402, wagers are not subject to federal excise taxes if placed with the state or its authorized agents. Plaintiff's argument would construct an "internal inconsistency" in § 2719(d)(1), then construe it to garner for tribes the same exemptions that § 4402 grants to states.

Defendant asserts that § 2719(d)(1) applies Title 26 to the reporting and withholding of taxes with respect to the winnings of players, not to the levy of excise taxes on the gaming operation itself. The language of the statute supports this interpretation. Section 2719(d)(1) effectively imposes the same responsibility on tribal gaming as on the states:

to report and withhold from the winnings of players in their games. Chapter 35 § 4401, applying the federal excise tax on gross revenue to entities operating lotteries, deals with an entirely different issue.

Chapter 35, incorporated parenthetically into § 2719(d)(1), does not address the issue of reporting and withholding taxes on winnings. That discrepancy, plaintiffs allege, gives rise to the internal inconsistency. The Indian Canon of Construction, "that ambiguous statutes and treaties are to be construed in favor of Indians, applies to tax exemptions." *Dillon v. United States*, 792 F.2d 849, 853 (9th Cir.1986) (citing *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941 (1912)). However, "[t]he intent to exclude [from tax] must be definitely expressed...." *Id.* (quoting *Choteau v. Burnet*, 283 U.S. 691, 697, 51 S.Ct. 598, 75 L.Ed. 1353 (1931)). The issue must present genuine questions of interpretation before the tribe may be given the benefit of the doubt. Chapter 35 does not address reporting and withholding taxes on winnings, but this possible oversight on the part of IGRA's drafters does not present tribes with a "blank check" to assume the mantle of states in all cases.

Plaintiffs characterize IGRA, citing its legislative history, as a statute that was intended to be beneficial to tribes. *See* 25 U.S.C. § 2702(1) (The purpose of this chapter is ... "[to promote] tribal economic development, self-sufficiency, and strong tribal governments"). Plaintiffs also cite a letter written by Senator Daniel Inouye to IRS Commissioner Fred Goldberg, expressing his view of Congress's intention. Senator Inouye explains the reference to Chapter 35 in § 2719(d)(1) as a measure to ensure treatment of the tribes as states, for purposes of the federal excise tax on gross wagers. Senator Inouye's letter was dated December 12, 1991. One letter written three years after enactment of IGRA is insufficient to properly characterize the intent of the whole legislative process.

Plaintiffs cite several subsequent proposals in Congress which would have explicitly exempted tribal gaming from excise taxes, as support for their characterization of the legislative intent as pro-Indian. *See, e.g.*, H.R. 1920, 99th Congress. The original language of S.555, the bill that became IGRA, included an explicit exemption for Indian gaming from federal excise tax, but that exemption was deleted prior to passage. Plaintiffs contention that the removal of the exemption must correspond to its implication elsewhere in the IRC is without basis. It makes little sense to offer, as proof of Congress's intent, language that Congress deliberately declined to enact. IGRA's purpose is better found in the language of the statute itself. Section 2702 makes clear that it was intended to regulate tribes' gaming, not provide extra revenue to the tribes. Throughout IGRA, it is clear that, to the drafters, IGRA promoted tribal autonomy and welfare by trying to limit the influence of organized crime over tribal affairs.

If Congress intended to exempt Indians from federal excise taxes on gross wagers, other courses of action would be vastly more sensible than creating an intentional ambiguity that must be stretched to accommodate the tribes. I.R.C. § 7871(a) specifically addresses the roles in which the tribes are to be treated as states for excise tax exemptions. Reference to Chapter 35 and tribal gaming are conspicuously absent from the list of exempt activities. This is consistent with Congress's reasoning, as expressed in § 7871(b), that such exemptions are to be granted only when "the transaction involves the exercise of an essential governmental function of Indian tribal government." Tribal gaming is not such a function.

## CONCLUSION

I.R.C. § 4401, on its face, classifies all wagers into either "state-authorized" or "unauthorized" gaming. The IRS taxes tribal gaming under the more lenient of the two possible rates, and the court can not infer a third category when the language of the statute is inclusive of all gaming operations. The IRS policy seems to expand the term "state-authorized" in § 4401(a)(1) to include gaming sanctioned by federal law, perhaps out of deference to the principle of tribal autonomy, instead of imposing the higher 2% rate on the tribes.

Plaintiffs' second argument, that § 2719(d)(1) allows tribes to take advantage of § 4402's state exemption to federal excise taxes, also must be dismissed. Section 2719(d)(1) imposes a burden on the tribes to report and withhold tax from the winnings of players 'in the tribes' pull-tab lotteries. A parenthetical reference to Chapter 35 does not create an exemption from federal excise taxes with anywhere near the degree of specificity the law requires.

The court is constrained, of course, in its judgment by the language of the relevant statutes. Only if that language is unclear may the legislative history be relied upon. Here, however, both point to the same conclusion. It is clear that tribes are subject to basic taxation, that § 4401 and § 4411 are broad enough to embrace tribal gaming, and that plaintiff cannot show any specific exemption. Therefore, the court must DENY plaintiff's Motion for Summary Judgment and GRANT defendant's Cross Motion for Summary Judgment. Accordingly, the Clerk of the Court is directed to enter judgment for the defendant, dismissing plaintiff's complaint with prejudice.

**IT IS SO ORDERED.**